IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM MACLARY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No. 04-065-JJF |
| | : |
| NURSE SUPERVISOR BRENDA | : |
| HOLWERDA and DR. KIONKA, | : |
| | : |
| Defendants. | : |

William Maclary, Pro se Plaintiff, James T. Vaughn Correctional Center, Smyrna, Delaware.

James Edward Drnec, Esquire, Balick & Balick, LLC, Wilmington, Delaware.  Attorney for Defendants Brenda Holwerda and Dr. Kionka.

**MEMORANDUM OPINION**

January 29, 2009
Wilmington, Delaware

Farnan, District Judge

Presently before the Court are Defendants' Motions For Summary Judgment, Plaintiff's Response thereto, and Defendants' Replies. (D.I. 51, 53, 57, 58, 59.) For the reasons discussed below, the Court will deny Dr. Kionke's Motion and will grant Brenda Holweda's Motion.

I. **BACKGROUND**

This case concerns Plaintiff's nearly two and one-half year odyssey to replace his lost dentures. Nursing supervisor Brenda Holwerda, R.N. ("Holwerda") and Dr. Cathy Kionke, D.D.S. ("Dr. Kionke")[1], Dental Director, are the remaining Defendants in this case. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs.

After Plaintiff's cell was "shaken down" on October 5, 2002, his dentures (upper plate) were missing. (D.I. 2 at ¶ 39) At the time, First Correctional Medical, Inc. ("FCM") was the medical provider for the Delaware Department of Correction ("DOC"). FMC's policies provided for dental service on a first-come, first serve basis, unless the treatment required was emergent in nature. (D.I. 51, ex. B. Kionke aff.)

---

[1] Plaintiff misspells Dr. Kionke's name as "Kionki."

-1-

After filing several grievances in an unsuccessful attempt to locate his dentures, Plaintiff saw Dr. Robinson on December 19, 2002, for a replacement denture. (D.I. 52, 1.) Dr. Robinson observed "rampant decay and periodontitis" and advised Plaintiff that he needed "mandibular extraction and construction of full upper and lower dentures." (Id.) Plaintiff refused to have his lower teeth extracted and opted to be placed on list for only a full upper denture. (Id. at 2.) Dr. Robinson's note state that an "impression will be done when we get to his name on denture list." (Id. at 1-2.) On the same date the Dental Department sent a memo to corrections officer Capt. Henry stating: "[Plaintiff] is missing all of his top teeth. After checking [Plaintiff's] lower teeth we see that they are badly decayed and periodontally involved. . . . No partial can be made around teeth in this condition. . . . His name was placed on the list to have a top plate done when we get to his name on the list. No treatment can be done to the lower teeth until [Plaintiff] agrees to have it done." (D.I. 52, 3.)

When an inmate needs upper and lower denture plates, FCM's policies and protocols required fabrication of both plates at the same time. (D.I. 51, ex. B. Kionke aff.) As a result, Dr. Kionke explained that when Dr. Robinson submitted Plaintiff's request for a single upper plate, it was denied. (Id.)

On January 25, 2003, Dr. Kionke examined Plaintiff.[2] (D.I. 52, 4.) Dr. Kionke noted "heavy plaque/calculus" and "severe perio".[3] (Id.) One month later, on February 22, 2003, Plaintiff wrote to the deputy warden complaining that, despite assurances from the Dental Department that he would be placed at the top of the list for new dentures, he was still waiting. (D.I. 35, ex. D.) Plaintiff's letter was forwarded to the Health Services Administrator on May 8, 2003. (Id.)

In the meantime, on April 6, 2003, Plaintiff filed grievance complaining that four months prior, he had been told by a dentist that he would be placed at the top of the list for his dentures." (D.I. 32, 54.) Holwerda responded to Plaintiff's grievance on May 7, 2003, and advised him that she had spoken with the Dental Clinic, that Plaintiff was on the list for dentures, and that he would be seen as soon as the schedule permitted. (Id. at 53.) On the same date, May 7, 2003, Dr. Robinson made a written request to "schedule Wm. Maclary for impression for dentures. He put in a grievance to Brenda." (D.I. 52, 5.) Handwriting at the bottom of the note indicates that Plaintiff is "scheduled 5-22-03". (Id.) Plaintiff also wrote to Holwerda on May 7, 2003,

---

[2] At the time Dr. Kionke was the Dental Director for FCM.
[3] Presumably periodontitis.

making several complaints, including that he had no dentures and had yet to be fitted for them. (D.I. 32, 147.)

Plaintiff was seen by Dr. Robinson on May 22, 2003. The progress note states, "presented to dental from nurse referral. Inmate now wants a full top denture only. After this is completed he has agreed to mandibular extractions and fabrication later of a full mandibular denture. His name was placed on the list for a top denture today. At inmate's last visit he wanted top and bottom dentures (full upper and partial lower) he would not agree to any extractions, because of this his name was not added to the denture list at that time. This was explained to inmate that his treatment goals now have allowed to advance in his dental treatment." (D.I. 52, 6.)

Plaintiff wrote a letter to Holwerda dated May 22, 2003, received on June 15, 2003, thanking her for prompting the Dental Department to see him. (D.I. 51, 7.) Plaintiff explains to Holwerda that he was told last year (i.e., 2002) that he would be placed at the top of the list [for dentures] because they were 'mistakenly' thrown away by a C/O . . . Because of some breakdown in communications [Plaintiff] is not getting on the list. . . . If you could please expedite this I would greatly appreciate it." (Id.) A handwritten notation by Holwerda indicates that she

-4-

copied the letter to the Dental Department on June 17, 2003. (Id.; D.I. 35, ex. E.)

In June 2003, Dr. Kionke investigated the facts behind Plaintiff's missing dentures and his request for a single upper plate. (D.I. 51, ex. B. Kionke aff.) She approved Plaintiff's request despite FCM's upper and lower denture plate policy. (Id.) On June 20, 2003, Dr. Kionke authored a memo to Plaintiff noting that Dr. Robinson had agreed to Plaintiff's request for extraction of the lower teeth and fabrication of a lower denture, but only after a full upper denture was made. (D.I. 52, 8.) Dr. Kionke advised Plaintiff that he was placed on the list for the upper denture and she hoped that it served as a resolution to Plaintiff's grievance. (Id.)

Plaintiff's lower teeth were x-rayed on November 4, 2003. (D.I. 52, 6.) In November or December 2003, Dr. Robinson resubmitted Plaintiff's request for a single upper plate. (D.I. 51, ex. B. Kionke aff.) Records indicate that a request was made for Plaintiff on November 4, 2003 for a full top plate first, and after receiving the top plate, "would like bottom teeth extracted and get a bottom plate made." (D.I. 32, 208.) Dr. Kionke states that Dr. Robinson's request did not indicate the reasons for the exception to FCM's upper and lower denture plate policy and, because she did not recognize Plaintiff's name, pursuant to FCM's

-5-

policy, Dr. Kionke denied the request for a single plate. (D.I. 51, ex. B, Kionke Aff.) According to Plaintiff, after Dr. Robinson requested the replacement of Plaintiff's top plate, Dr. Kionke refused the request. (D.I. 53, ex. at 27.)

Plaintiff was seen by Dr. Robinson on January 27, 2004. Progress notes state that "[i]nmate seen in MHU to discuss the fact that he was denied his request for full upper dentures then lower extractions then full lower dentures. Explained that the usual method for full upper full lower dentures is to complete all extractions and then construct dentures as a set. Inmate does not want to take this path because he does not want to be on soft diet. Consult with Dr. Kionke. (D.I. 51, ex. B, Kionke Aff.; D.I. 52, 6.)

Plaintiff wrote to Holwerda on March 21, 2004, seeking an explanation why he was unable to have his dentures replaced. (D.I. 54, 15.) Holwerda copied the letter to Dental. (Id.)

Upon review of the denial, Dr. Robinson scheduled Plaintiff to see Dr. Kionke, and an appointment was scheduled for May 28, 2004. (D.I. 51, ex. B, Kionke Aff.) On the appointed date, Dr. Kionke explained to Plaintiff the benefits and advantages of having both sets of dentures made at the same time. (Id.; D.I. 52, 9.) Dental notes state that "Pt. agreed to get FUD/FLD

denture made together as long as we take out all remaining teeth in one appointment." (D.I. 52, 9.)

Plaintiff was next seen by Dr. Kionke on August 4, 2004. On that date, Plaintiff signed an Informed Consent for Extraction, and Dr. Kionke extracted Plaintiff's remaining lower teeth. (Id. at 9-10.) Complications arose because the root tip of teeth #22 and #29 fractured and could not be visualized. (Id. at 9.) Dr. Kionke decided to leave the root tips rather than surgically remove them, and explained his reasons to Plaintiff. (D.I. 51, ex. B, Kionke Aff.)

On November 1, 2004 Plaintiff filed a request for dental treatment complaining that his prior September 4, 2004 sick call slip had been ignored, complaining of ongoing pain and requesting x-rays. (Id. at 11.) A notation on the slip states, "seen." (Id.)

Plaintiff was next seen on January 3, 2005. (D.I. 52, 12.) Plaintiff signed another Informed Consent for root tip removal surgery, and was x-rayed. (Id. at 12-13.) Dr. Kionke surgically removed tooth/bone root fragment at teeth #22 and #29, and scheduled Plaintiff for follow up in two weeks. (Id. at 12.) Next, on January 17, 2005 preliminary impressions were taken, followed by final impressions on January 31, 2005. (Id.) After adjustments on February 14, 2005, the dentures were finally

delivered to Plaintiff on March 21, 2005. (Id. at 14) Plaintiff's March 31, 2005 denture follow-up notes that he was "doing very well". (Id. at 12.)

Dr. Kionke and Holwerda move for summary judgment on the grounds that Plaintiff cannot establish their deliberate indifference to a serious medical need. (D.I. 51, 53.) Plaintiff opposes the Motions. (D.I. 57.)

**II. STANDARD OF LAW**

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from

which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**III. DISCUSSION**

**A. Deliberate Indifference To A Serious Medical Need**

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 104 (1976). For Plaintiff to establish an Eighth Amendment violation, he must establish that Defendants acted with deliberate indifference to his serious medical needs. Id. Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." Estelle, 429

-9-

U.S. at 104-05. Mere negligence does not violate the Eighth Amendment. Id. at 106. Additionally, "mere disagreement as to the proper medical treatment" is insufficient to establish an Eighth Amendment violation. Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). The Third Circuit has specifically found deliberate indifference when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

### B. Dr. Cathy Kionke

Plaintiff's dentures went missing on October 5, 2002, and it was not until March 21, 2005, that he finally received replacement dentures. Dr. Kionke argues that summary judgment is appropriate because the delay in providing Plaintiff dentures was a result of administrative misunderstanding and miscommunication, not deliberate indifference. Plaintiff opposes the motion on the grounds that Dr. Kionke refused to order his dentures, that she knew of his medical condition because she had examined him, and that even after Dr. Robinson made a written request on May 22,

-10-

2003, it took another two years to complete the dentures. (D.I. 57.)

Dr. Kionke places the blame for the delay in providing Plaintiff dentures squarely upon Dr. Robinson. Dr. Kionke argues that she only saw Plaintiff once, on January 25, 2003, before Plaintiff agreed on May 28, 2004, to go forward with an upper and lower set of dentures. Prior to that time, Dr. Robinson provided treatment to Plaintiff.

Dr. Kionke, the Dental Director, denied Dr. Robinson's request for Plaintiff to receive upper dentures on two occasions; December 19, 2002 and November or December 2003. After investigation, Dr. Kionke approved the second denture request of May 22, 2003, but no action was taken, necessitating the third request which was denied. Dr. Kionke contends that she denied the denture requests because Dr. Robinson failed to explain circumstances that would have allowed Dr. Kionke to ignore the policies and protocol of her employer, FCM. Those policies required fabrication of upper and lower dentures at the same time. It was not until May 2004, when Plaintiff finally agreed to FCM's policy requiring fabrication of both the upper plate and lower plate at the same time, that progress was made towards his dentures.

Upon review of the record the Court finds that a jury should determine whether Dr. Kionke manifested a deliberate indifference to Plaintiff's serious medical need. It is undisputed that Plaintiff had no dentures for almost two and one-half years. Kionke blames the delay upon Dr. Robinson for her alleged failure to describe Plaintiff's particular circumstances. The record indicates that Dr. Robinson made her requests for only an upper denture based upon Plaintiff's medical condition and Plaintiff's desire to keep his lower teeth even though they were in bad condition, and not have them extracted. Conversely, Dr. Kionke is quite clear that she made her denials for only the upper plate based upon the policies of her employer, FCM. Indeed, she argues that was bound to administer FCM's policies. As the Third Circuit states, "the Estelle test gives substantial latitude to prison medical authorities to diagnose and treat inmates patients, but '[i]mplicit in this deference to . . . is the assumption that such an informed judgment has, in fact been made. . . .'" Young v. Kazmerski, 266 Fed. Appx. 191, 194 (3d Cir. 2008) (citations omitted). Dr. Kionke had examined Plaintiff and was aware of his severe periodontal disease. Yet her position, that she made her decisions based upon FCM's policies, indicates her denial of the upper denture may have been due to non-medical reasons (i.e. administering FCM's policies), not upon her

informed judgment. See Monmouth, 834 F.3d at 346 ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." (internal quotation and citation omitted.)) The serious nature of Plaintiff's dental condition, the lengthy delay in providing him dentures, and the non-medical reasons for the delay, raise questions as to whether Dr. Kionke was deliberately indifferent to Plaintiff's serious medical need. Accordingly, the Court will deny her Motion For Summary Judgment.

### C. Nurse Supervisor Brenda Holwerda

Holwerda moves for summary judgment on the grounds that Plaintiff cannot show that she was deliberately indifferent to a serious medical need. More particularly, she argues that the record shows that each time Plaintiff sought her assistance, she forwarded his requests to the Dental Department. Plaintiff opposes her motion on the basis that she was in charge of medical grievances and all she ever did was to "pass [his] letters on to someone else." (D.I. 57.)

The record reflects that whenever Plaintiff voiced his concerns to Holwerda, she took action. For example, Holwerda contacted Plaintiff after he submitted his April 6, 2003 grievance and advised him she had spoken to Dental. In turn, Plaintiff was given a dental appointment for May 22, 2003, with

Dr. Robinson noting that Plaintiff had submitted a grievance with Holwerda. Notably, Plaintiff wrote a note to Holwerda on May 22, 2003, thanking her for her assistance with the Dental Department. In that note Plaintiff asks her to expedite his dentures and she forwarded the letter to Dental. Similarly, when Plaintiff wrote to Holwerda in March 2004, she copied to letter to Dental.

A reasonable jury could not find that Holwerda was deliberately indifferent to Plaintiff's medical needs. The record reflects that Holwerda did not ignore Plaintiff's concerns, but brought them to the attention of the Dental Department. Plaintiff has not shown a genuine issue for trial and summary judgment on Holwerda's behalf is proper.

## IV. CONCLUSION

For the above reasons, the Court will deny Dr. Kionke's Motions For Summary Judgment and will grant Holwerda's Motion for Summary Judgment. (D.I. 51, 53.) An appropriate Order will be entered.